Case 4:23-cv-03968   Document 22   Filed on 03/28/24 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
March 28, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LORI RICE, in her capacity as attorney-in-fact of ROBERT COOLBERTH<br>*Plaintiff,*<br><br>v.<br><br>DOYLE LOGAN PITTMON, in his individual capacity, and MONTGOMERY COUNTY<br><br>*Defendants.* | § § § § § § § § § § § § | CIVIL ACTION NO. 4:23-cv-3968 |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Pending before the Court are the defendants', Doyle Logan Pittmon ("Pittmon"), in his individual capacity and Montgomery County ("County") motions to dismiss the plaintiff's, Lori Rice ("Rice") lawsuit, brought in her capacity as attorney-in-fact of Robert Coolberth ("Coolberth"). The defendants filed seperate motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 9, 12). The plaintiff, Rice, has filed a response to both Pittmon and County's motion (Dkt. No. 14, 17).  After reviewing the motions, the pleadings, the relevant exhibits, and the applicable law, the Court determines that defendants' motions should be **DENIED.**

**II.   FACTUAL BACKGROUND AND CONTENTIONS**

This case raises claims under the Americans with Disabilities Act and the Rehabilitation Act of 1973 and 42 U.S.C. 1983. The plaintiff is suing the defendants for unlawful conduct addressed against Robert Coolberth on January 19, 2023. On that occasion, the plaintiff alleges that deputy Doyle Logan Pittmon was dispatched to the Woodlands Nursing and Rehabilitation Center ("WNR-Center") where Coolberth was a patient and resident at the time. Coolberth had been a patient under treatment for several years.

According to the plaintiff's pleadings, Coolberth suffers from Parkinson's disease that has caused significant mental and physical decline. He was also a victim of a stroke, recurrent blood clots in his lungs, spinal cord degeneration, partial paralysis, hearing loss, and orthostatic hypotension resulting in spells of fainting. As a result of these diseases, Coolberth walked with a "slow and unsteady gait, requiring assistance from a walker or another person" when traveling beyond the hallways of the WNR-Center.

On January 19, medical staff summoned Montgomery County Hospital District-EMS for assistance with a patient who was lying on the floor perhaps in the hallway and presumed to be dead. Personnel from the Montgomery County Fire Department along with deputy Pittmon, of the Montgomery County Sheriff's Department, also responded to the emergency call. Coolberth overheard the commotion and was standing in his doorway when a family with a young child walked by headed in the direction of the emergency team. Coolberth informed the family what was happening, and that the small child should not see the decedent's body, or the medical procedures being performed. The plaintiff surmises that deputy Pittmon overheard Coolberth and immediately confronted him.

Deputy Pittmon, according to the plaintiff, "aggressively confronted Coolberth and told him to get in his room. Coolberth tried to explain to deputy Pittmon that he was in his room…" and what he was attempting to do regarding the family. Deputy Pittmon continued giving commands towards Coolberth. Allegedly, Coolberth became "bewildered and off-balance[d] on his feet." When Coolberth failed to respond as deputy Pittmon would have him respond, deputy Pittmon resulted to "force, punching Coolberth on the side of his head so hard that he shattered Coolberth's eardrum and then tackled him to the ground." [sic]. The attack pushed Coolberth back into his room. Deputy Pittmon closed the door and refused to permit the nurse staff to enter the room and administer medical attention. He also refused to give his badge number to the WNR-Center staff, but instead called his Sergeant to the scene. Coolberth was on the floor in his room in a pool of blood. The blood appeared to be coming

from Coolberth's left ear according to the plaintiff. Coolberth's memory and physical conditions have since deteriorated.

### A. THE PLAINTIFF'S CONTENTIONS

The plaintiff contends that, instead of responding appropriately to Coolberth's conduct, Pittmon resorted to the use of unnecessary force against him. He punched Coolberth, causing severe injuries, including a shattered eardrum, and then tackled him to the floor. He then prevented the nursing staff from providing immediate medical assistance to Coolberth and refused to disclose his badge number.

Due to the severity of his injuries, Coolberth, was transported to a Level 2 Trauma Center where he was diagnosed with a ruptured tympanic membrane that has led to hearing loss. He has also experienced acute shoulder pain. Coolberth was discharged from the Trauma Center the following day; however, he continues to experience complications, including dizziness and lightheadedness, leading to an admission to the Veterans Affairs Medical Center (VAMC). Subsequently, he suffered a stroke but was finally discharged on January 26, 2023.

### B. THE DEFENDANT PITTMON'S CONTENTIONS

Pittmon contends that the plaintiff cannot establish that he, Pittmon violated the ADA. The ADA requires a claimant to demonstrate that he was a qualified individual under the ADA, that he was denied benefits or was discriminated against by deputy Pittmon, and that such denial or discrimination was due to his disability. He also argues that as a matter of law, only public entities such as Montgomery County are subject to these statutes, and therefore, any claim against him individually under the ADA should be dismissed. Additionally, Pittmon asserts that the ADA does not apply to an officer on-the-street responding to incidents before he secures the scene and ensures that there is no threat to human life. The defendant, Pittmon further claims that the plaintiff's allegations do not show that he intentionally discriminated against Coolberth based on Coolberth's disability. Lastly, deputy

Pittmon argues that a claim under the ADA has never been recognized against an individual; hence, Coolberth's claims are barred by qualified immunity.

### C. THE DEFENDANT MONTGOMERY COUNTY'S CONTENTIONS

The initial argument from Montgomery County is that Coolberth has not sufficiently alleged a pattern and practice claim against Montgomery County. Deputy Pittmon's training, as mandated by the Texas Commission on Law Enforcement was adequate. Moreover, Montgomery County contends that the plaintiff did not plead deliberate indifference or that ADA training would not have altered the outcome given the specific circumstances of the incident.

Montgomery Country also contends that there are two fundamental flaws with applying the ADA and Rehabilitation Act to the plaintiff's claims. First, the plaintiff has failed to "plausibly" establish the existence of a policy that would necessitate an accommodation, as the alleged incident was based on the officer's use of force after a non-threatening statement. Next, Montgomery County asserts that the plaintiff has not alleged non-conclusory facts indicating that the officer intended to discriminate against Coolberth based on his disability. Montgomery County maintains that the plaintiff's allegations do not support intentional discrimination, and there is no plausible evidence that the defendant had the necessary knowledge to trigger a duty to accommodate Coolberth. Finally, Montgomery County argues that the plaintiff did not adequately allege that the scene was secure, citing to the "exigent circumstances" exception in on-the-street police responses.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss for "failure to state a claim upon which relief can be granted." Under the demanding standards of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec.*, Inc., 94 F.3d 189, 194 (5th Cir. 1996). Dismissal is appropriate only if the "[f]actual allegations [are not] enough to raise a right

to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court's review is limited to the allegations in the complaint and any documents attached to a defendant's motion to dismiss, if they are both referred to in the complaint and central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc*., 394 F.3d 285, 288 (5th Cir. 2004).

## IV.    ANALYSIS & DISCUSSION

"[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." The statute defines "public entities" to include local governments. 42 U.S.C. § 12131. *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020) (citing to statute). The Rehabilitation Act also prohibits denial of similar benefits and protections including "instrumentalities of local government." 29 U.S.C. § 794. See also. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002).

In the Court's view, the plaintiff has asserted a prima facie case against deputy Pittmon individually and Montgomery County in that the plaintiff has pled that Coolberth was a disabled person who lived in the WNR-Center where disabled persons are treated to be encountered. Any questions concerning Coolberth's disabilities could be learned from the nurses and personnel that were summoned to the scene. The evidence shows that Coolberth was denied the obvious benefits - deference- due to him as a patient that must be afforded to any person suffering from a debilitating disease. Both Pittmon and Montgomery County knew that the location of the emergency was a center that housed special people. Neither can deny the obvious. See *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004).  Had Coolberth not been disabled, he would not have been housed at the WNR-Center. Moreover, deputy Pittmon knew that he was dealing with a disabled man, not

someone on the "streets". Hence, there was no excuse for deputy Pittmon's conduct. The Court is of the view that the plaintiff has pled sufficiently to avoid FRCP 12(b)(6).

Nevertheless, deputy Pittmon asserts that he is entitled to "qualified immunity". "Qualified immunity shields from liability all but the plainly incompetent or those who knowingly violate the law." *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018). "In determining whether an officer is entitled to this defense, the Court asks whether the facts, taken in the light most favorable to the party asserting the injury… show the officer's conduct violated a [federal] right." *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014).; and, whether the right violated was clearly established at the time of the violation. *Id* at 656. The law against assaults and unprovoked assaults is clear. Deputy Pittmon's conduct was unprovoked. For him to argue that he was "getting control of the scene" or responding to an "on-the-street" type incident is humorous to say the least and ridiculous at best. Coolberth was in his assigned room where he enjoyed First, Fourth, Eighth, and Fourteenth Amendment protections. Deputy Pittmon entered his space and assaulted him. The alleged acts by deputy Pittmon were vicious, immoral, and barbarous in nature and would not have been exacted by a properly trained officer.

In its motion to dismiss, Montgomery County argues that the plaintiff's pleading fail to show that Montgomery County properly and adequately trained deputy Pittmon concerning his obligations and duties when handling a disabled individual. Here, Montgomery County does not argue that TCLE (state) training was sufficient or that street encounters training is the proper training. Both assumptions are flawed. The Center housed disabled people not street criminals. The Court holds that Coolberth is a qualified individual under the ADA and the Rehabilitation Act, and that Montgomery County owes a duty to train their deputies concerning how to handle its citizens. To not provide training is a policy determination. By not properly training deputy Pittmon, as alleged, constitutes an exclusion against Coolberth under the Act. When a governmental agency fails to properly train its police personnel concerning how to handle a disabled person, the government may be found to act with indifference.

Finally, Montgomery County's argument that Pittmon's encounter with Coolberth was a "chance encounter" is unsavory, to say the least, particularly, when daily an officer may cross paths with a disabled person. Vicariously liability attaches when the conduct of the officers reveals that there is no training in place. In the Court's view, the plaintiff has pled with sufficient specificity to overcome Montgomery County's FRCP 12(b)(6) defense.

## V. CONCLUSION

Based on the analysis and discussion hereafter, the Court determines that the defendants' motions to dismiss should be **DENIED**.

It is so **ORDERED**.

SIGNED on March 28, 2024, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge